# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CYRUS EARL JOSEPH,** | : | **CIVIL NO. 1:10-CV-1222** |
| Petitioner, | : | (Judge Caldwell) |
| v. | : | (Magistrate Judge Carlson) |
| **CRAIG LOWE, et al.,** | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction

This case involves a habeas corpus petition filed by Cyrus Joseph, a Swiss national, who emigrated to the United States from the Commonwealth of Dominica, and is now an immigration detainee awaiting removal from the United States following his conviction on robbery charges. Joseph was ordered removed in August 2009, but remains in immigration custody while immigration officials work with the Swiss and Dominican governments to effect his removal and deportation. Dissatisfied with his continued detention pending removal, Joseph has filed this petition for writ of habeas corpus seeking release from immigration custody.

While Joseph's current post-removal order detention now exceeds the presumptively reasonable 6-month period prescribed by the United States Supreme

in *Zadvydas v. Davis*, 533 U.S. 678 (2001), we believe–at present–that Joseph's continued detention is justified, given both his prior criminal record, as well as the likely prospect that immigration officials will be able to effect his removal in the foreseeable future. Accordingly, it is recommended that this petition be denied without prejudice.

## **II.**     **Statement of Facts and of The Case**

The Petitioner, Cyrus Earl Joseph, is a native of Switzerland and a citizen of Dominica. (Doc. 10, Ex. 1). On September 21, 1996, Joseph entered the United States as a lawful permanent resident. (Id., Notice to Appear Ex. 2). While he resided in the United States Joseph was charged, and convicted, of a serious, violent crime. Specifically, Joseph was charged in New York state with attempted robbery, a criminal charge arising out of a June 22, 2007 robbery attempt. (Id., Ex. 3.) Joseph was subsequently convicted of attempted robbery in the second degree in the Supreme Court of New York, and, on February 1, 2008, was sentenced to a two-year term of imprisonment.(Id., Ex. 3.).

Following this conviction, Joseph was contacted by immigration officials, who notifeed him that he was subject to deportation based upon this felony conviction and served Joseph with a Notice to Appear on July 29, 2008 for further deportation proceedings. This Notice to Appear charged that Joseph was subject to removal from

the United States under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") as an alien convicted of an aggravated felony. (Id., Notice to Appear, Ex. 2).

Deportation proceedings were then scheduled in Joseph's case, with the Immigration Court scheduling Joseph's removal proceedings for December 16, 2008. These proceedings were scheduled in December 2008 in order to allow Joseph an opportunity to tender applications for relief from removal. (Id., Order of the Immigration Judge, 01/20/2009, Ex. 4). However, when no applications were filed on Joseph's behalf, the Immigration Judge found that Joseph had abandoned any and all claims from removal. (Id.)

Joseph appealed this decision to the Board of Immigration Appeals. On April 29, 2009, the Board of Immigration Appeals remanded Joseph's case to the Immigration Judge because, based on the record, it was unclear whether Joseph understood the nature of the proceedings. (Id., BIA Decision, Ex. 5).

While these proceedings were pending before the Board of Immigration Appeals, Joseph was transferred out of immigration custody in New York. Accordingly, once this case was remanded, in May of 2009, the Immigration Judge entered an Order directing the parties to present a motion concerning proper venue for further proceedings, since Joseph was no longer in the custody of the New York State

Department of Corrections Services, the Immigration Court located at the Ulster Correctional Facility in Napanoch, New York could no longer schedule hearings. (Id., Order of the Immigration Judge, 05/11/2009, Ex. 6).

Joseph's removal proceedings were then transferred to the Immigration Court in York, Pennsylvania, where Joseph was now housed. On August 21, 2009, an Immigration Judge in York ordered Joseph to be removed from the United States to Dominica, or in the alternative, to Switzerland. (Id., Order of the Immigration Judge, 08/31/2009, Ex. 7). In reaching this result, the Immigration Judge noted that Joseph had withdrawn his applications for withholding of removal and deferral of removal under the Convention Against Torture ("CAT"). (Id.) Joseph did not appeal this ruling to the Board of Immigration Appeals within the thirty days permitted under 8 C.F.R. § 1003.38. Accordingly by law, the August 31, 2009 order of the Immigration Judge became an administratively final order of removal on September 30, 2009. (Id., HQ POCR Checklist for 241.4 Reviews, Ex. 8).

As an alien subject to a final deportation order since September 30, 2009, Joseph has remained in Immgration custody as immigration officials have endeavored to work with two governments–Dominica and Switzerland– to effect the removal of this alien. In the meanwhile, immigration officials also conducted a post-removal order

custody review in Joseph's case on March 30, 2010, and a Decision to Continue Detention was issued on April 2, 2010.(Id., Decision to Continue Detention, Ex. 9).

These immigration records reveal that, in connection with this April 2010 custody review, Joseph was informed that his release from custody would not be authorized for several reasons. First, immigration officials concluded that, in light of his criminal history of robbery in the second degree, Joseph was deemed a threat to the community and a flight risk. (Id.). The Decision to Continue Detention further noted that Joseph had been unable to provide immigration officials with any information concerning where he would reside in the United States while awaiting deportation if he was released, a factor which further heightened their concerns regarding whether Joseph would present a risk of flight or danger to the community if he was released. (Id.) That Decision to Continue Detention also stated that immigration officials were continuing to work with representatives of the Dominican Consulate to effect his removal, and that travel documents authorizing Joseph's removal from the United States to Dominica were anticipated to be received in the foreseeable future. (Id.)

These findings regarding the diligence of immigration efforts to promptly remove Joseph and the likelihood of his removal in the foreseeable future were further underscored by other immigration records. (Id., HQ POCR Checklist, Ex. 9.) These records revealed that immigration officials had contacted, or attempted to contact, the

5

Dominican consulate on nine separate occasions between January and March 2010 to secure travel documents for the Petitioner.(Id.) On at least one occasion immigration officials were informed by Dominican consular officers that they "had expected to receive it [Joseph's travel document] by now and expect[ed] it at any time." (Id.) Thus, while Dominican officials have been delayed in securing these documents, nothing in the immigration records suggests that travel documents will not be forthcoming. Quite the contrary, the Dominican consulate has stated that they "had expected to receive it [Joseph's travel document] by now and expect[ed] it at any time." (Id.) Rather, the delay in obtaining the documents has been described as an understandable consequence of the fact that Joseph is being removed to Dominica but "was born in Switzerland", thus requiring the cooperation of two foreign governments to affect his removal. (Id.)

On June 9, 2010, while these efforts were on-going, Joseph filed this motion for a writ of habeas corpus, challenging his continued immigration detention pending removal. (Docs. 1 and 11.) In this petition, Joseph advances a single, narrow claim. Thus, Joseph expressly and repeatedly eschews any constitutional claims arising out of the pre-removal delay in this immigration case. (Id.) Instead, Joseph focuses exclusively upon the delay following the September 30, 2009 entry of an administratively final order of removal in this matter. Citing this nine-and-one-half month delay, Joseph insists that his current period of detention pending removal is

presumptively unreasonable, and seeks an order directing immigration officials to release him on bail pending deportation. (*Id*.) The United States has responded to this petition (Doc. 10), and this matter is now ripe for resolution.

For the reasons set forth below, it is recommended that the petition be denied because, at present, Joseph's continued detention is justified, given his prior record of violent crime, his failure to provide immigration officials with any verified residence to which he can be released, and the likely prospect that immigration officials will be able to effect his removal in the foreseeable future.

### III. Discussion

#### A. Joseph's Current Post Removal Detention Remains Reasonably Related to His Foreseeable Removal and Does Not Offend Due Process

As an alien under an administratively final order of removal, Cyrus Joseph's current post-removal detention is now governed by a series of statutory and constitutional rules. First, by statute, aliens like Joseph, who are subject to final removal orders, must initially be detained under 8 U.S.C. § 1231(a), which directs the Attorney General to remove such aliens within 90 days of the entry of a removal order. 8 U.S.C. § 1231(a)(1)(A). As part of the removal process that statute also specifically commands that "[d]uring the removal period the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2). Thus, federal law generally mandates an initial 90-day period of detention for aliens, like Joseph, who are awaiting removal from this

country. For purposes of our analysis of any post-final order period of detention, this statutory ninety-day "removal period" during which detention is mandatory begins on the date the order of removal becomes administratively final; that is, thirty days after the entry of this order by the Immigration Judge, the time permitted under 8 C.F.R. § 1003.38 for an appeal of this order. In Joseph's case the appeal deadline elapsed, and this removal order became administratively final, on September 30, 2009. See 8 U.S.C. § 1231(a)(1)(B)(I).

In this case, Joseph's post-removal detention has now exceeded this mandatory 90-day detention period, and is approximately 9 ½ months in duration. Having exceeded the mandatory statutory post-removal detention period, Joseph's continuing immigration detention pending removal now begins to implicate a series of other legal and constitutional considerations. For aliens awaiting removal, like Joseph, the contours of those constitutional considerations are now defined by the United States Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and its progeny.

In *Zadvydas*, the United States Supreme Court recognized due process concerns which apply to aliens who are indefinitely detained while awaiting removal from the United States. While the court in *Zadvydas* sustained the validity of the initial mandatory detention period for such aliens during the ninety-day removal period prescribed by 8 U.S.C. § 1231(a)(1)(A), in order to avoid constitutional concerns, the

8

court concluded that for terms of detention beyond this initial 90-day period: "we think it practically necessary to recognize some presumptively reasonable period of detention." *Id.* at 701.

The court then observed that:

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months . . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

Taken together, 8 U.S.C. § 1231(a)(1)(A) and *Zadvydas* create a statutory and constitutional framework for protecting the rights of aliens who are detained pursuant to administratively final removal orders. Under this framework, such aliens shall be detained for the first 90 days of the removal period. Further detention beyond this 90-day period will then be presumed reasonable up to a period of 6 months, at which

time, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either respond with evidence sufficient to rebut that showing or give the alien bail consideration.

Cases construing *Zadvydas* recognize, however, that the presumptively reasonable six-month detention period described by the Supreme Court is just that–a presumptively reasonable period of detention. It is not an ironclad time frame within which aliens must be removed, or released. Moreover, echoing the Supreme Court's observation that "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months,' *id.* at 701, courts have concluded that an alien who has been held longer than six months awaiting removal still bears an initial burden of proof to secure release pending removal.

In such instances, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft,* 287 F.3d 1050, 1052 (11th Cir. 2002). *See, e.g.*, *Rodney v. Mukasey*, 340 F. App'x 761, 764 (3d Cir. 2009); *Encarnacion-Mendez v. Attorney General*, 176 F. App'x 251, 254 (3d Cir. 2006); *Joseph v. United States*, 127 F. App'x 79, 81 (3d Cir. (Caldwell, J.) In instances when

an alien is unable to produce evidence demonstrating good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future, courts have frequently sustained continuing periods of detention pending removal well beyond the six-month time frame described as presumptively reasonable by the Supreme Court in *Zadvydas*, reasoning consistent with *Zadvydas* that: "[t]his 6-month presumption, . . ., does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Applying these standards, periods of detention far in excess of the nine-and-one-half months currently experienced by Joseph have been sustained where the alien has failed to show there is no significant likelihood of removal in the reasonably foreseeable future. *See, e.g.*, *Joseph v. United States*, 127 F. App'x 79 (3d Cir. 2005) ( 11 months); *Robinson v. District Director*, No. 09-637, 2009 WL 3366439 (M.D. Pa. Oct. 19, 2009)(Caldwell ,J.)(1 year); *Brown v. Attorney General*, No. 09-313, 2009 WL 2225431 (M.D. Pa. July 23, 2009)(10 months); *Cyril v. Bureau of Immigration and Customs Enforcement*, No. 05-2658, 2006 WL 1313857 (M.D. Pa. May 11, 2006)(Caldwell, J.)(10 months); <u>Aishrat v.</u>

Mukasey, No. 08-786, 2008 WL 3071003 (M.D. Pa. Aug. 1, 2008)(Caldwell, J.)(10 months).[1]

Judged against these standards, it is clear that, while Joseph's current 9 ½ month detention is of sufficient duration to trigger scrutiny by this Court, his claim that he has been subjected to an unconstitutionally excessive and prolonged detention fails on its merits at the present time since Joseph has not "provide[d] evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale,* 287 F.3d at 1052. Quite the contrary, the government's response shows that immigration officials are actively taking steps to remove Joseph from the United States, contacting and attempting to contact the Dominican consulate on nine separate occasions in the span of three months. Furthermore, while Dominican officials have been delayed in securing these documents, nothing in the immigration records suggests that travel documents will not be forthcoming. Quite the contrary, the Dominican consulate has flatly stated that they "had expected to receive it [Joseph's travel document] by now and expect[ed] it at any time." (Doc. 10, Exs. 8 and 9). Rather, the delay in obtaining the required travel

---

[1] In his petition Joseph relies upon *Wilks v. U.S. Dep't of Homeland Security*, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008) to support his claim for relief here. However, *Wilks*, which addresses legal issues relating to pre-removal detention of aliens, simply has no application in this setting where Joseph's sole complaint is the duration of his post-removal detention.

documents seems to be an understandable consequence of the fact that Joseph is being removed to Dominic but "was born in Switzerland", thus requiring the cooperation of two foreign governments to affect his removal. (Id.)

Given the assertion that Joseph's travel document is "expect[ed] at any time," we cannot say that Joseph has demonstrated "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale,* 287 F.3d at 1052. Furthermore, while seeking Joseph's removal, immigration officials also conducted an April 2010 post-removal custody review for Joseph, which concluded that his continued detention was appropriate given his violent criminal past, his inability to provide immigration officials with a place of residence in the United States where he could be released, and the prospect of his removal from the United States in the foreseeable future. (Doc.10, Exs. 8 and 9.) This agency determination is fully warranted in light of Joseph's criminal history and justifies his continued, brief detention pending removal.

While we find that Joseph has not carried his burden of proof under *Zadvydas*, justifying habeas corpus relief at this time, we remain mindful of the Supreme Court's admonition that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely

would have to shrink". *Zadvydas*, 533 U.S. at 701. In this regard, this Court's prior observation is particularly apt:

> Of course, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas,* 533 U.S. at 701, 121 S.Ct. at 2505. Thus, if time passes with no progress on removal, [the petitioner] may file a new 2241 petition challenging his continued detention. We believe it would not be unreasonable for him to file another petition after four more months. Alternatively, he may file sooner if specific events occur indicating he would not be removed in the reasonably foreseeable future. We add, however, that we express no opinion on whether such a motion would succeed in either circumstance.

*Aishrat v. Mukasey*, No. 08-786, 2008 WL 3071003, *2 (M.D.Pa. Aug.1, 2008).

In sum, at present, Joseph has not carried his burden of proving that he will not be removed in the foreseeable future, and that his continued detention has become unreasonable in its duration. Therefore, his petition should be denied without prejudice.

## IV. **Recommendation**

For the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED without prejudice to renewal at such time, if any, as the delay and detention become unreasonable and excessive .The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of July, 2010.

        *S/Martin C. Carlson*
        **United States Magistrate Judge**